**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GAYANE LALABEKYAN, *individually and on behalf of the putative class*,

    *Plaintiff*,

    v.

MOHAMMAD REZA VAZIRI,

    *Defendant*.

Civil Action No. 23-01994 (AHA)

### Memorandum Opinion

Plaintiff Gayane Lalabekyan has sued Mohammad Reza Vaziri, the president and CEO of a British mining company, based on Vaziri's alleged role in a conflict involving the government of Azerbaijan and Armenian people in a region called Nagorno-Karabakh. According to the operative complaint, Vaziri provided support to a nine-month blockade depriving these Armenians of food, medicine, and other supplies. Lalabekyan claims that by doing so, Vaziri aided and abetted false imprisonment, the intentional infliction of emotional distress, and Torture Victim Protection Act (TVPA) violations. Vaziri has moved to dismiss these claims on several grounds, including lack of personal jurisdiction. Because the Court lacks personal jurisdiction over Vaziri, the Court grants the motion without reaching his further arguments.

I.    **Background**

Lalabekyan lived in Nagorno-Karabakh, an enclave in the South Caucasus, from the start of Azerbaijan's blockade in December 2022 until September 2023. ECF No. 16 ¶¶ 1, 10. According to Lalabekyan, the Nagorno-Karabakh Republic was legally established as a sovereign

state in 1991 and was a self-governing republic at the time this case was filed. *Id.* ¶¶ 24, 42.[1] She

alleges war broke out between Nagorno-Karabakh (supported by Armenia) and Azerbaijan after

December 1991. *Id.* ¶ 43. A ceasefire agreement was reached in May 1994 and lasted for more

than two decades. *Id.* ¶ 43–44.

Defendant Vaziri allegedly had connections to the president of Azerbaijan at the time of

the 1994 ceasefire agreement. *Id.* ¶¶ 46–48. One of Vaziri's companies and an Azerbaijani state

entity reached an agreement in 1997 for the exploration, development, and production sharing of

certain mining areas, including a mine in Nagorno-Karabakh. *Id.* ¶ 49. Vaziri eventually became

the president and CEO of Anglo Asian, a U.K. entity that obtained the purported rights granted

under that agreement. *Id.* ¶¶ 11, 51–52.

Several years later, in March 2016, Vaziri "arranged and/or participated in" a meeting with

the Azerbaijani president and a member of the Anglo Asian board of directors to discuss precious

metal deposits in the northern Martakert region of Nagorno-Karabakh. *Id.* ¶ 57. According to the

amended complaint, Azerbaijan launched a military offensive in that region the next day, killing

over 100 Armenians. *Id.* ¶ 58. Conflict broke out again in September 2020, when "Azerbaijan

waged another unprovoked large-scale attack on Nagorno Karabakh." *Id.* ¶ 59. Vaziri allegedly

stated that this conflict presented an opportunity for Anglo Asian to develop its remaining contract

areas and accelerate its growth strategy. *Id.* ¶ 67.

Armenia, Azerbaijan, and Russia signed a trilateral statement to end hostilities in

November 2020. *Id.* ¶ 60. Under the terms of that statement, Azerbaijan guaranteed "safe

---

[1] According to Defendant Vaziri, this assertion is a legal conclusion that the Court need not accept as true. ECF No. 18-2 at 3. Instead, Vaziri maintains that it "has long been clearly established both under U.S. government policy and within the international diplomatic community that Nagorno-Karabakh is part of the Republic of Azerbaijan." *Id.* at 4.

movement of citizens, vehicles and cargo in both directions along the Lachin corridor." *Id.* ¶ 63. As of late 2020, that corridor was the only strip of land connecting Nagorno-Karabakh with Armenia. *Id.* ¶ 64. And a single road, the Goris-Stepanakert Road, traverses the corridor. *Id.*

In 2021 and 2022, Vaziri allegedly "pressed Azerbaijan for access" to certain Nagorno-Karabakh mines. *Id.* ¶¶ 74, 81. On December 3, 2022, a group of Azerbaijanis physically blocked the Goris-Stepanakert Road for several hours. *Id.* ¶ 82. Lalabekyan alleges that Vaziri was involved in the blockade and "continued pressing Azerbaijan for access" to the Nagorno-Karabakh mines. *Id.* ¶¶ 82–83. On December 12, a large group of Azerbaijanis presenting themselves as "eco-activists" physically blocked the Goris-Stepanakert Road. *Id.* ¶ 87. Again, Lalabekyan alleges that Vaziri was involved in the blockade, which "caused a humanitarian catastrophe in Nagorno-Karabakh, depriving the Armenian population of access to food, medicine, heat, electricity, and normal living conditions for 286 days." *Id.* ¶¶ 1, 88.

Lalabekyan asserts that in September 2023, after the initial complaint was filed in this case, Azerbaijan launched a military attack on Nagorno-Karabakh that targeted homes, hospitals, and schools. *Id.* ¶ 106. Days later, she alleges, "Azerbaijan finally opened the Lachin Corridor . . . but only in one direction—out. Within 4 days, over 101,000 ethnic Armenians were ethnically cleansed from Nagorno-Karabakh over the Goris-Stepanakert Road that Azerbaijan had illegally blockaded for 286 days." *Id.* ¶ 109 (emphasis omitted). Lalabekyan and thousands of other Armenians crossed through the corridor into Armenia, where they were met by aid workers. *Id.* ¶ 110.

Lalabekyan sued Vaziri in this Court. After Vaziri moved to dismiss, Lalabekyan filed an amended complaint on behalf of herself and a putative class of "[a]ll persons who were located in that part of Nagorno-Karabakh which was surrounded by Azerbaijani armed forces and/or other

agents of the Azerbaijani regime . . . from December 12, 2022, to September 23, 2023." *Id.* ¶ 111. She asserts claims against Vaziri for aiding and abetting (1) false imprisonment, (2) the intentional infliction of emotional distress, and (3) violations of the TVPA. *Id.* ¶¶ 116–95. Vaziri again moved to dismiss on various grounds, including lack of personal jurisdiction, the political question doctrine, the act of state doctrine, failure to join Azerbaijan as an indispensable party, and failure to state a claim for relief. ECF No. 18-2.

## II.    Discussion

A federal court can adjudicate claims against a party only when it has personal jurisdiction over the party or the party has waived any challenge to personal jurisdiction. The Supreme Court recognizes two types of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction refers to where a party is "essentially at home," and there a court can hear "any and all claims" brought against them. *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction allows jurisdiction over a party "less intimately connected with a State," but only if there is "an affiliation between the forum and the underlying controversy." *Id.* at 359 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)).

While the federal Constitution sets an outer limit on federal courts' exercise of personal jurisdiction, the scope is otherwise determined by state law, and when personal jurisdiction is challenged, it is the plaintiff's burden to establish the factual basis for it. *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021); *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). If, as here, jurisdiction is being assessed without discovery or an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Livnat v.*

*Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017); *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

Lalabekyan does not argue the Court can exercise specific jurisdiction over Vaziri; there has been no suggestion that her claims arise from Vaziri's contacts with D.C. Lalabekyan instead argues the Court can exercise general jurisdiction over Vaziri—that is, that Vaziri is "essentially at home" in D.C., such that any claim can proceed against him here. *Ford*, 592 U.S. at 358 (quoting *Goodyear*, 564 U.S. at 919). However, Lalabekyan has not made a *prima facie* case for general jurisdiction.

"Where the defendant is an individual, 'the paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 43 (D.C. Cir. 2020) (quoting *Goodyear*, 564 U.S. at 924). D.C. law accordingly provides that courts "may exercise personal jurisdiction over a person domiciled in" the District. D.C. Code § 13-422. An individual's domicile depends on their "physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984); *see also Mitchell v. United States*, 88 U.S. 350, 352 (1874) ("By the term *domicile*, in its ordinary acceptation, is meant the place where a person lives and has his home."). A person may have only one domicile, which may differ from their residence. *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("One acquires a 'domicile of origin' at birth, and that domicile continues until a new one (a 'domicile of choice') is acquired." (citation omitted)); *see also Core VCT Plc v. Hensley*, 59 F. Supp. 3d 123, 126 (D.D.C. 2014) (noting that "a person may have multiple residences, but may have only one domicile").

Here, Lalabekyan's original complaint alleged that Vaziri lives in Bethesda, Maryland. ECF No. 1 ¶ 8. She accordingly specified a Bethesda, Maryland, address on the civil cover sheet

and request for summons, which the Court issued. ECF Nos. 1-1, 1-2. After Vaziri appeared and contested personal jurisdiction, Lalabekyan changed course and filed an amended complaint asserting that Vaziri "resides, among other places, in Washington D.C." ECF No. 16 ¶ 12. Vaziri then renewed his motion to dismiss for lack of personal jurisdiction, attaching an affidavit attesting that he lives at the Maryland address that Lalabekyan specified in her initial complaint. ECF No. 18-3 ¶ 2. He attests that he has lived there for over two decades, has never lived in or owned property in D.C., and has never filed taxes listing a home address in D.C. *Id.* ¶¶ 2–3, 5. Lalabekyan claims the Court can nonetheless conclude Vaziri's domicile is D.C. rather than Maryland, pointing to biographies on websites and annual reports stating that Vaziri "resides in Baku, London and Washington, DC." ECF No. 19 at 4; *see, e.g.*, ECF No. 19-1.

This does not suffice as a *prima facie* showing that Vaziri's domicile is D.C. Vaziri's unrebutted affidavit, consistent with Lalabekyan's own initial allegations, indicates that he does not and has not lived in D.C. That biographies on websites and reports indicate Vaziri resides in D.C. does not give reason to believe he is domiciled here. Biographies commonly refer to a broader metropolitan area—indeed, Vaziri's affidavit attests that was his purpose. ECF No. 18-3 ¶ 4. That is not nearly enough to change Vaziri's domicile to D.C. *See Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 33 (D.D.C. 2014) (explaining that "whatever the Defendant may *say* about its degree of contact with a forum, in order to assert general jurisdiction over a defendant, the court still must find facts establishing the requisite *actual* connection to the forum").

Indeed, even if Lalabekyan's amended allegation that Vaziri "resides, among other places, in Washington D.C." were unrebutted and assumed true, it would not suffice to establish Vaziri's domicile. "Domicile is not necessarily synonymous with residence, and one can reside in one place but be domiciled in another." *Miss. Band*, 490 U.S. at 48 (internal quotation marks and citation

omitted); *see also Steigleder v. McQuesten*, 198 U.S. 141, 143 (1905) ("[I]t has long been settled that residence and citizenship were wholly different things within the meaning of the Constitution and the laws defining and regulating the jurisdiction of the circuit courts of the United States; and that a mere averment of residence in a particular state is not an averment of citizenship in that state for the purposes of jurisdiction."). The allegation, by its terms, does not provide any basis to conclude whether Vaziri's domicile would be D.C. or one of the "other places" he allegedly resides.[2]

Lalabekyan alternatively argues that the Court can exercise general jurisdiction over Vaziri because he maintains his "principal place of business" in the District. ECF No. 19 at 2; *see* D.C. Code § 13-422.[3] She points to her allegations that Vaziri has "maintained business and/or professional offices" in D.C. for several years related to an organization that he founded and chairs. ECF No. 19 at 2 (citing ECF No. 16 ¶¶ 14–15). This too falls short of establishing general jurisdiction. As Lalabekyan's amended complaint alleges, Vaziri serves as president and CEO of a British mining company—indeed, the allegations against Vaziri are premised on his role at that company. ECF No. 16 ¶ 11. Lalabekyan does not allege that Vaziri's business at the mining

---

[2] The Court rejects Lalabekyan's argument that her allegations and the website biographies create a "credibility" issue necessitating discovery and an evidentiary hearing. *See* ECF No. 19 at 5. Lalabekyan has failed to make the *prima facie* showing required to support the exercise of jurisdiction in the absence of discovery or a hearing. Nor has Lalabekyan made a "showing of how jurisdictional discovery would help [her] discover anything new." *Baptist Mem'l Hosp. v. Johnson*, 603 F. Supp. 2d 40, 44 (D.D.C. 2009) (citation omitted), *aff'd sub nom. Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57 (D.C. Cir. 2010).

[3] In analyzing the outer limits of due process, analysis of general jurisdiction over an individual has generally focused on domicile, while analysis of general jurisdiction over a corporation has focused on its place of incorporation and principal place of business. *See Ford*, 592 U.S. at 358–59; *Goodyear*, 564 U.S. at 924. Here, however, the Court assumes without deciding that D.C. law extends general jurisdiction to an individual's domicile and principal place of business. *See* D.C. Code § 13-422 (extending jurisdiction to "a person domiciled in" or "maintaining *his or its* principal place of business in" the District (emphasis added)). As explained, even so Lalabekyan has not made the necessary *prima facie* showing.

company takes place in D.C. or provide a basis to conclude that Vaziri's "principal place of business" is appropriately determined based on his organizational affiliation rather than his job as an executive at the mining company. To the contrary, Lalabekyan's own exhibit indicates Vaziri spends an average of 0.10 hours per week on work related to the organization and receives no compensation. ECF No. 19-10 at 7; *see Corsi v. Caputo*, No. CV 19-1573, 2020 WL 1703934, at *4 n.4 (D.D.C. Apr. 7, 2020) (declining to find general jurisdiction where plaintiff alleged "no facts showing that either [defendant] has more than occasional business-related contact with the District of Columbia"); *Messina v. Fontana*, No. 03 CV 0011, 2004 WL 7343864, at *2 (D.D.C. Aug. 12, 2004) (concluding that court lacked general jurisdiction over defendant who had home office in Maryland and "only occasionally performed consulting work" in D.C. for foundation); *see also Skinner v. United States*, No. 05-cv-2237, 2007 WL 744737, at *2 (D.D.C. Mar. 6, 2007) (holding that court lacked personal jurisdiction under section 13-422 where defendant worked in District but resided elsewhere).

Separate from her arguments about domicile and principal place of business, Lalabekyan relies on her allegation that Vaziri has "continuous and systematic" ties to the District. ECF No. 19 at 6; *see* ECF No. 16 ¶¶ 14–21. Lalabekyan is not clear about the legal foundation for this argument. While the Supreme Court has said due process requires "continuous and systematic" ties for general jurisdiction, *Goodyear*, 564 U.S. at 919, Lalabekyan ultimately needs to show that D.C. law authorizes general jurisdiction, *see Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). Here, that law requires that Vaziri be "domiciled in" or have his "principal place of business" in the District. D.C. Code § 13-422. And it may be that the "continuous and systematic" test Lalabekyan invokes is exclusive to corporations. *Burnham v. Superior Ct. of Cal.*, 495 U.S.

8

604, 610 n.1 (1990) (plurality opinion) ("It may be that whatever special rule exists permitting 'continuous and systematic' contacts to support jurisdiction with respect to matters unrelated to activity in the forum applies *only* to corporations, which have never fitted comfortably in a jurisdictional regime based primarily upon 'de facto power over the defendant's person.'" (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))). In any event, her conclusory allegations are insufficient. Although Lalabekyan alleges that Vaziri has participated in his D.C. organization, signed documents showing an office in D.C., and hosted events in D.C., those are not contacts "so continuous and systematic as to render [him] essentially at home" in the District. *Erwin-Simpson*, 985 F.3d at 891 (internal quotation marks and citation omitted); *see Harrington v. DC Winery, LLC*, No. CV 22-689, 2023 WL 5561604, at *3 (D.D.C. Aug. 29, 2023) (holding that allegations that defendant founded and owned D.C. company and was generally involved in operational decisions were "not specific enough to establish sufficiently continuous and systematic contacts"); *Allen v. Addi*, No. 20-CV-01650, 2021 WL 4306078, at *9 (D.D.C. Sept. 22, 2021) (finding that allegations about defendant's professional, financial, and personal connections to the District were insufficient to show that she maintained continuous and systematic general business contacts there).

## III.    Conclusion

For the foregoing reasons, the Court lacks personal jurisdiction over Vaziri. And without personal jurisdiction, the Court is "powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (citation omitted). Vaziri's motion to dismiss, ECF No. 18, accordingly is granted. The case is dismissed without prejudice. Lalabekyan's motion for leave to file a sur-reply pertaining to other issues, ECF No. 21, is denied as moot.

A separate order consistent with this decision accompanies this memorandum opinion.

_____

AMIR H. ALI
United States District Judge

Date:   February 20, 2025